### John F. WILLIAMS,
### Plaintiff-Appellant,

v.

**CITY OF COLUMBIA; City of Columbia Zoning Board of Adjustment; J.M. McCulloch; Zack Weston; Katheryn Bellfield; Shirley Curry; Marsha Monteith; Edgar L. Morris; Richard M. Unger, In their official capacities as members of the City of Columbia Zoning Board of Adjustment; Nathanial B. Land, Jr., In his official capacity as Zoning Administrator of the City of Columbia, Defendants-Appellees,**

**The American Radio Relay League, Incorporated, Amicus Curiae.**

No. 89-1068.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1990.

Decided June 29, 1990.

As Amended July 10, 1990.

---

9. Given this disposition, we leave undisturbed the district court's finding on class certification.

Richard Ashby Farrier, Jr., argued, John F. Kuppens, on brief, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for appellant.

James Shelton Meggs, argued, Roy D. Bates, on brief, City Attorney's Office, Columbia, S.C., for appellees.

Charles Freret, Christopher D. Imlay, Booth, Freret & Imlay, Washington, D.C., for amicus curiae.

Before RUSSELL and SPROUSE, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

DUPREE, Senior District Judge:

This appeal from a grant of summary judgment entered by the district court in favor of defendants-appellees presents a conflict between a City of Columbia, South Carolina (the City), zoning ordinance requiring a special exception for radio antennas exceeding seventeen feet in height and the desires of plaintiff-appellant John F. Williams to erect an antenna of sufficient height to communicate with all areas of the world. For the reasons set forth below, we find no error and affirm the judgment of the district court.

I.

Williams was granted an amateur radio license by the FCC, pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.*, and thereafter began preparations for an antenna system that would be twenty-eight feet high when retracted and fifty-five to sixty-five feet high when fully extended. Since the City's zoning ordinance requires anyone wanting to erect an antenna over seventeen feet to apply for a special exception to the Zoning Board of Adjustment (ZBA), *see* City of Columbia Zoning Ordinance § 6–3099, Williams presented the matter to the ZBA at a public hearing on November 10, 1987. His request for a special exception was denied on November 11, 1987.

Williams subsequently filed suit in federal court on August 25, 1988, alleging the City's zoning ordinance to be invalid based on the federal preemption of an FCC declaratory ruling, *Amateur Radio Preemption*, 101 F.C.C.2d 952, 50 Fed.Reg. 38813 (1985) (PRB–1), and certain provisions of the Constitution. By order filed February 28, 1989, the district court ordered the ZBA to rehear Williams' application in order to perform the reasonable accommodation analysis required by PRB–1. 707 F.Supp. 207.

On April 18, 1989, the ZBA again denied the application for a special exception, this time certifying that it did so in accordance with PRB-1. By order filed July 31, 1989, the district court denied Williams' motion for summary judgment on the preemption issue and ordered further briefing on the constitutional issues. By order filed October 2, 1989, the district court denied Williams' motion for reconsideration of the preemption issue and granted defendants' motion for summary judgment on all other issues, whereupon Williams filed this appeal.

## II.

Initially, Williams argues that the district court erred in concluding that the findings of the ZBA should be left undisturbed so long as they were not "arbitrary and capricious" or "clearly erroneous." Williams asserts that those standards are inapplicable, because the case involves questions of law or mixed questions of law and fact which must be reviewed by the district court *de novo. Rawl v. United States,* 778 F.2d 1009, 1014 n. 9 (4th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). However, we find that the district court's deference to the ZBA extended only to findings of fact and that the court gave appropriate review to the legal questions involved.

■ In general, federal courts must accord a state agency's fact-finding the same preclusive effect to which it would be entitled in state courts where the agency acted in a judicial capacity and the parties had an adequate opportunity to litigate. *University of Tennessee v. Elliott,* 478 U.S. 788, 797–99, 106 S.Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986). Williams argues, however, that the lack of opportunity to cross-examine witnesses precluded an adequate opportunity to litigate and called into question whether the ZBA was acting in a judicial capacity. He also argues that his due process rights were violated since the ZBA was not a fair and impartial tribunal. *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970).

■ As a preliminary matter, there is a strong argument that Williams has waived this ground by not requesting a change in the procedure to allow for cross-examination and by not objecting to the district court's order of a rehearing before the ZBA. Even if Williams is deemed not to have waived his objections to the fairness of ZBA procedures, we are unconvinced that the ZBA proceedings, where Williams was represented by counsel and permitted to present extensive evidence, were either inadequate or violative of due process. *See United States v. Utah Construction and Mining Company,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

■ Moreover, there is no evidence of bias against Williams by the ZBA other than the resulting adverse decision and an inference from the fact that Williams had named the members of the ZBA as defendants in his federal suit. The district court below correctly pointed out that presuming bias against Williams and disqualifying the ZBA from consideration of the matter would encourage all applicants for zoning variances to file federal suits against local authorities, thereby converting federal courts into super zoning boards.

## III.

■ Williams' principal argument is that the zoning ordinance should be invalidated pursuant to PRB-1 because it operates to preclude amateur radio communications and it does not represent the minimum practicable regulation to accomplish the City's legitimate purpose.

In PRB-1, the FCC announced a policy of limited rather than complete federal preemption of local zoning laws which affect amateur radio communications. The text of PRB-1 states that:

22. Few matters coming before us present such a clear dichotomy of viewpoint as does the instant issue. The cities, counties, local communities and housing associations see an obligation to all of their citizens and try to address their concerns. This is accomplished through regulations, ordinances or covenants oriented toward the health, safety

and general welfare of those they regulate. At the opposite pole are the individual amateur operators and their support groups who are troubled by local regulations which may inhibit the use of amateur stations or, in some instances, totally preclude amateur communications.... In this situation, we believe it is appropriate to strike a balance between the federal interest in promoting amateur operations and the legitimate interests of local governments in regulating local zoning matters. The cornerstone on which we will predicate our decision is that a reasonable accommodation may be made between the two sides.

\*    \*    \*    \*    \*    \*

24. ... [W]e recognize here that there are certain general state and local interests which may, in their even-handed application, legitimately affect amateur radio facilities. Nonetheless, there is also a strong federal interest in promoting amateur communications.... Upon weighing these interests, we believe a limited preemption policy is warranted. State and local regulations that operate to preclude amateur communications in their communities are in direct conflict with federal objectives and must be preempted.

25. Because amateur station communications are only as effective as the antennas employed, antenna height restrictions directly affect the effectiveness of amateur communications.... We will not, however, specify any particular height limitation below which a local government may not regulate, nor will we suggest the precise language that must be contained in local ordinances, such as mechanisms for special exceptions, variances, or conditional use permits. Nevertheless, local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose.

The present case is made more difficult by the relative paucity of previous opinions applying PRB–1 to specific zoning ordinances. In *Bodony v. Incorporated Village of Sands Point,* 681 F.Supp. 1009, 1013 (E.D.N.Y.1987), the court struck down a twenty-five-foot height limitation as applied to plaintiff's radio antenna where the action of the local zoning board was "devoid of any effort to make 'a reasonable accommodation ... between the two sides.'" In *Bulchis v. City of Edmonds,* 671 F.Supp. 1270, 1274 (W.D.Wash.1987), the court granted summary judgment to plaintiff seeking a conditional use permit for a seventy-foot retractable radio antenna where the application of a zoning ordinance to plaintiff did not provide for reasonable accommodation of amateur radio communication. In *Howard v. City of Burlingame,* No. C–87–5329 (N.D.Cal. July 29, 1988) (1988 WESTLAW 169074), the court invalidated a zoning ordinance governing radio antennas where the city "failed to explore alternatives to a blanket denial" of plaintiff's application for a special permit.

In contrast to previous cases where zoning ordinances were found to be violative of PRB–1, it appears that by seeking a compromise with Williams, the City applied its zoning ordinance in compliance with FCC regulations. Specifically, the record reveals that the ZBA investigated the possibility of accommodating Williams' request while simultaneously preserving the aesthetic beauty and safety of the neighborhood by suggesting a restriction of hours of operation, but these attempts at compromise were rejected by Williams. Moreover, the ZBA's rejection of Williams' previous application for a special exception does not preclude him from now filing an application for a smaller structure or for an antenna which would only be fully extended during nighttime hours.

We disagree with the position taken by the American Radio Relay League as amicus curiae that Williams must be allowed to build whatever he wants. They contend that "a municipality cannot, consistent with the FCC's preemption regulation, limit am-

ateur radio antennas under any circumstances, to ... any ... nonfunctional height (in this case, anything significantly less than the 65 feet requested by the appellant)." Amicus Brief at 6. However, absent a full federal preemption in this area, the law cannot be that municipalities have no power to restrict antennas to heights below that desired by radio licensees. The law requires only that the City balance the federally recognized interest in amateur radio communications with local zoning concerns. The fact that Williams would only be satisfied if that balance results in the City allowing him to build an antenna of whatever height he chooses does not entitle him to relief.

In an argument closely related to the preemption issue, Williams attacks the fact that the ZBA denied the application for a special exception in part due to Williams' lack of participation in activities for the Department of Defense and other emergency relief organizations and the presence of other available radio operators in the area. The ZBA concluded, and the district court accepted as a finding of fact, that Williams used his radio for recreational purposes and could not assist in emergency communications. Williams asserts that the ZBA abused its discretion and invaded the province of the FCC by independently evaluating the need for his participation in the amateur radio network.

However, since Williams' whole case centers on the proposition that he is entitled to a special exception merely because he needs it, the ZBA must be able to consider his specific needs and the way in which he would use his antenna. This is particularly true in light of the ZBA's "duty of striking 'a balance between the federal interest in promoting amateur operations and the legitimate interests of local governments in regulating local matters.'" *Bodony*, 681 F.Supp. at 1013. Rather than precluding local zoning boards from considering the extent to which individuals seeking to erect antennas would further federal interests, as Williams argues, we find that PRB–1 requires such an analysis.

## IV.

■ Next, Williams argues that the zoning ordinance is void for vagueness because it contains no standards for variances. However, since the zoning ordinance is clearly written to require all antennas measuring over seventeen feet to get the approval of the ZBA, the void for vagueness label does not fit the facts of this case. *See, e.g., Jordan v. De George*, 341 U.S. 223, 231, 71 S.Ct. 703, 707–08, 95 L.Ed. 886 (1951) (the test for vagueness is "whether the language conveys sufficiently definite warning as to the proscribed conduct").

Rather than a vagueness challenge, Williams seems to be asserting that the ordinance violates due process by conferring unbridled and standardless discretion in the ZBA. *See, e.g., Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). However, the ZBA was not, as Williams argues, operating in a standardless vacuum. The criteria to be used by the ZBA in deciding whether to grant a special exception are contained in Section 6–3192 of the City's zoning ordinance and include "adverse impact of the proposed use on the aesthetic character of the environs, to include possible need for screening from view."

Of course, any city enacting a zoning ordinance must strike a balance between a standard which is on the one hand so definite that it runs afoul of the requirement of PRB–1 to weigh federal against local interests, and on the other hand so vague that it gives too much discretion to local officials. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Company*, 467 U.S. 947, 964 n. 12, 104 S.Ct. 2839, 2850–51 n. 12, 81 L.Ed.2d 786 (1984) (stating that a statute that provided for exemptions "whenever necessary" was inherently suspect, since it placed discretion in the hands of an official to grant or deny a license). We find that the City's zoning ordinance, which allows for special exceptions based on the standards enumerated in Section 6–3192, strikes that balance in a way that is permissible as a matter of law.

## V.

Finally, Williams argues that the zoning ordinance violates his right to equal protection because it infringes the fundamental right of free speech and it irrationally treats antennas differently than other structures.

■ Regarding the first prong of Williams' equal protection argument, the zoning ordinance is a content-neutral time, place and manner restriction, and therefore is not an unconstitutional infringement of the right to free speech. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62–63, 96 S.Ct. 2440, 2448–49, 49 L.Ed.2d 310 (1976) (holding that zoning regulations are a permissible means of restricting certain types of speech to certain locales within a city). The denial of Williams' application for a special exception was not based on the content of his proposed speech, but was an attempt to promote legitimate content-neutral interests. *Guschke v. City of Oklahoma City*, 763 F.2d 379, 385 (10th Cir.1985).

■ Regarding the second prong, we agree with the district court's determination that there is at least a rational distinction between antennas, which are ordinarily not considered part of a building, and chimneys, spires and other structures, which are integral parts of a building. *See Bulchis*, 671 F.Supp. at 1274 (concluding that there is no basis for the equal protection argument); *Howard v. City of Burlingame*, 1988 WESTLAW 169074 (holding that distinction between various types of antennas has a rational basis). Therefore, the ordinance is not violative of equal protection.

## VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.