**Vernon HOWARD, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF BURLINGAME, Defendant–Appellant, Cross–Appellee.**

**Nos. 90–15048, 90–15050.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1991.

Decided June 19, 1991.

Natalie E. West, Meyers, Nave, Riback & West, San Leandro, Cal., for defendant-appellant-cross-appellee.

Harold D. Caplener, San Jose, Cal., for plaintiff-appellee-cross-appellant.

Before HUG, POOLE and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Vernon Howard, a federally licensed amateur or "ham" radio enthusiast, was denied permission to construct a 51–foot radio antenna in his back yard, and filed suit against the City. The district court found that the Federal Communications Commission ("F.C.C.") had partially preempted the City's zoning powers, and ordered the City to reconsider the application. Although the City then granted Howard's permit, he unsuccessfully sought to reinstate his 42

U.S.C. § 1983 claim in an attempt to secure attorney fees. He now appeals the denial of his § 1983 and free speech claims, and the City cross-appeals the district court's ruling on federal preemption.

## FACTS

Howard holds an Amateur Extra class license, granted by the F.C.C. under authority delegated by Congress in the Federal Communications Act ("FCA"), 47 U.S.C. § 151 *et seq.*, as amended. *See* 47 C.F.R. §§ 97, App. 3, 97.7(e), 97.61. He resides in the City of Burlingame, California, which requires a special permit for ham radio antennas over 25 feet in height. *See* Burlingame City Code § 18.18.020 and § 25.1.040.

In June of 1987, Howard applied to the City Planning Commission to increase the height of his existing radio antenna to 51 feet. Although the Commission conditionally approved the permit, and the City building inspector approved the proposed structure, Howard's neighbors appealed the decision to the City Council. After a hearing, the Council questioned Howard's need for the new antenna and denied the permit on the grounds of safety, aesthetic concerns, and potential disruption of radio and television signals.

Howard then filed this lawsuit, claiming that the City's ordinance and its decision were preempted by an F.C.C. ruling known as PRB–1.[1] He also claimed that the City had violated the First Amendment and 42 U.S.C. § 1983, *inter alia.* On cross-motions for summary judgment, the district court held that PRB–1 preempted the City's decision-making powers and required it to "reasonably accommodate" Howard's request. It found the City's grounds pretextual, ordered the City to reconsider the matter and suggested some avenues for compromise. It also granted summary judgment to the City on Howard's other seven claims, which it termed "makeweight."

On reconsideration, the City granted Howard's permit as requested. Even so, Howard subsequently moved to reinstate his § 1983 claim in an attempt to secure attorney fees under 42 U.S.C. § 1988. The district court denied the motion, reasoning that no statutory or constitutional rights were violated, and that Howard's earlier victory rested on the supremacy clause which does not guarantee individual rights. Howard timely appeals the denial of his § 1983 and § 1988 claims, and the City cross-appeals the court's ruling on PRB–1 preemption.

## I. *Statutory Rights*

The essence of Howard's claim on appeal is that his F.C.C. license, F.C.C. regulations, and/or the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, confer rights on him which are enforceable through 42 U.S.C. § 1983. On appeal, the only relief he seeks is a declaration to that effect and reimbursement of his attorney fees as authorized by 42 U.S.C. § 1988.

The Supreme Court has recently clarified the law in this area, establishing a three-part test for determining whether a federal statute creates rights under § 1983. In *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989), the Court explained:

> In deciding whether a federal right has been violated, we have considered [1] whether the provision in question creates obligations binding on the governmental unit or rather 'does no more than express a congressional preference for certain kinds of treatment.' [2] The interest the plaintiff asserts must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.' [3] We have also asked whether the provision in question was 'inten[ded] to benefit' the putative plaintiff.

*Id.* (citations omitted). *See also Wilder v. Virginia Hosp. Ass'n*, —— U.S. ——, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).

---

**1.** The declaratory ruling at issue is "Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities," 101 F.C. C.2d 952, 50 Fed.Reg. 38,813 (1985) (hereafter "PRB–1").

In addition, even if a federal right does exist under this test, Congress may foreclose the availability of § 1983 relief by express language in the substantive statute. *Id.* 110 S.Ct. at 2523.[2]

To determine whether Howard has any enforceable federal rights to the antenna of his choice, then, we first consider whether "the provision[s] in question creates any binding obligations" on the City. Howard offers three distinct sources for such obligations: (1) the Federal Communications Act itself, (2) his F.C.C. Extra class license and/or the F.C.C. regulations which authorize and define the license requirements, 47 C.F.R. § 97 *et seq.*, or (3) PRB–1, the F.C.C. ruling which partially preempts local zoning authority to prohibit radio antennas. We reject each contention.

 The text of the Federal Communications Act nowhere mentions any right to erect antennas for ham radio transmissions, nor does it purport to create binding obligations on local governments to allow antennas of any particular height. In the statute, Congress defined its intended beneficiaries as "all the people of the United States," and described its purposes as promoting national defense, safety of life and property, and centralizing regulatory authority over the airwaves. 47 U.S.C. § 151. As the district court correctly found, the Act is thus intended to benefit the general public, as opposed to any individual operator.

Section 303 of the Act also states that its goal is to further the public interest in radio communications, and especially to facilitate emergency transmissions. It authorizes the F.C.C. to test and license amateur operators and amateur stations, but does not expressly confer any rights on amateur radio operators such as Howard or create any binding obligations upon local governments. Similarly, the other sections cited by Howard merely establish categories of amateur radio operators and stations, and several expressly limit any purported rights they may enjoy. *See, e.g.,* 47 U.S.C. §§ 153(q) (defining amateur station), 154(f) (authorizing licensee-volunteers), 309, 310, 313 (expressly limiting "rights" available to licensees).[3]

In fact, the most significant section of the FCA forecloses rather than supports Howard's claim: "no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license." 47 U.S.C. § 301. Such language is evidence that no enforceable right exists under § 1983, and that Congress intended to foreclose claims such as Howard's. *See Golden State,* 110 S.Ct. at 449; *Wilder,* 110 S.Ct. at 2523. *Cf. Wright,* 479 U.S. at 430, 107 S.Ct. at 773. The Act thus grants no § 1983 right to licensees to erect antennas.

A long line of cases, stretching back to *F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940) and before, supports this conclusion. As the Supreme Court emphasized in that case, though the Act may confer standing to appeal, it "is not designed primarily as a new code for the adjustment of conflicting private rights though adjudication." *Id.* "The Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications.... private litigants have standing only as representatives of the public interest." *Scripps–Howard Radio, Inc. v. F.C.C.,* 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1941). *See also National Broadcasting Co. v. United States,* 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); *F.C.C. v. Sanders Bros. Radio Station,* 309 U.S. 470, 475, 60 S.Ct. 693, 697, 84 L.Ed. 869 (1940); *Comtronics, Inc. v. Puerto Rico Tel. Co.,* 409 F.Supp. 800, 811–12 (D.P.R.1975). Howard's attempt to distinguish these cases on the grounds that none of them

---

**2.** A second exception, inapplicable here, exists where Congress provided a comprehensive remedial scheme in the statute itself. *See id.* (citing *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423–24, 107 S.Ct. 766, 770–71, 93 L.Ed.2d 781 (1987)).

**3.** Howard emphasizes that the word "right" appears in the FCA seven times, but neglects to note that each statement limits rather than establishes licensees' rights. *See, e.g.,* 47 U.S.C. §§ 301, 309, 310, 313; *Yankee Network v. F.C.C.,* 107 F.2d 212, 216, n. 13 (D.C.Cir.1939).

deal with antennas is beside the point; each rejects the contention that the FCA confers private rights on licensees. While PRB–1 may create a cause of action for Howard, the statute does not.

 As for Howard's second argument, it is true that federal regulations do have the force of law and may define legal obligations enforceable under § 1983. *Wright*, 479 U.S. at 431, 107 S.Ct. at 774.[4] However, the F.C.C. regulations proffered by Howard, 47 C.F.R. § 97.1 *et seq.*, do not help his case. The closest match is 47 C.F.R. § 97.111, which authorizes holders of the Amateur Extra class license, like Howard, to operate their stations and communicate world-wide. However, the relationship between Howard's authorized transmission power, the height of his antenna, and Burlingame's local zoning ordinance is too "vague and amorphous" to allow judicial enforcement. *See Golden State*, 110 S.Ct. at 448. Unlike the successful plaintiffs in *Wright*, Howard can point to no regulation which spells out benefits "sufficiently specific and definite to qualify as enforceable rights under … § 1983." *Id.*, 479 U.S. at 432, 107 S.Ct. at 774.

 The F.C.C. declaratory ruling entitled PRB–1 is the only regulation which addresses the conflict between ham operators' need for effective (i.e., tall) antennas and a municipality's enforcement of its local zoning ordinances. However, as the district court held below, the language of PRB–1 itself confers only a limited federal preemption, and promotes the federal interest in amateur radio operations rather than any individual operator's right to erect the antenna of his or her choice. Furthermore, it entitles the operator only to "a reasonable accommodation" between the desired antenna height and "the legitimate interests of local governments in regulating local zoning matters," not to an absolute preference. PRB–1, ¶ 22; *Williams v.*

*City of Columbia*, 906 F.2d 994, 997 (4th Cir.1990); *Thernes v. City of Lakeside Park*, 779 F.2d 1187, 1188–89 (6th Cir. 1986).

In enacting PRB–1, the F.C.C. declined to specify absolute height limitations or maximums, and refused to entirely preempt the field. Instead, it established a compromise, stating that:

local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose.

PRB–1, ¶ 25. Clearly, this does not contemplate the outright invalidation of city zoning authority over backyard antenna height,[5] nor does it appear to confer rights upon licensees to anything more than "reasonable accommodation." Instead, the rule leaves a city free to deny an antenna permit as long as it has considered the application, made factual findings, and attempted to negotiate a satisfactory compromise with the applicant. *See, e.g., Williams v. City of Columbia*, 906 F.2d 994, 997 (4th Cir.1990) (affirming second denial of variance for 65–foot antenna after reconsideration in light of PRB–1); *MacMillan v. City of Rocky River*, 748 F.Supp. 1241, 1248 (N.D. Ohio 1990) (PRB–1 does not mandate that city approve antenna).

 Lastly, as the district court correctly held, Howard's preemption victory below did not vest him with any enforceable rights under 42 U.S.C. § 1983. This is because the supremacy clause merely safeguards federal interests against state infringement, and operates to preempt state regulatory action without creating individual rights. *See Golden State*, 110 S.Ct. at 449; *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848–52 (9th Cir.

---

4. There is, however, some question as to whether they may create rights not already implied by the enabling statute. *See id.* at 437–38, 107 S.Ct. at 777–78 (O'Connor, J., dissenting).

5. Burlingame's ordinance is clearly distinguishable from those which establish absolute limitations on antenna height and are thus facially inconsistent with PRB–1. *See, e.g., Evans v. Commissioners, County of Boulder, Co.*, 752 F.Supp. 973, 975–78 (D.Colo.1990); *Bodony v. Incorporated Village of Sands Point*, 681 F.Supp. 1009 (E.D.N.Y.1987).

1984), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987).[6] As in *White Mountain,* Howard has attempted to "dust off" his constitutional claims here solely for the purpose of obtaining fees in a case where " 'civil rights' of any kind are at best an afterthought." *Id.* at 854–55 (quoting *Maine v. Thiboutot,* 448 U.S. 1, 24, 100 S.Ct. 2502, 2514, 65 L.Ed.2d 555 (1980) (Powell, J. dissenting)). We affirm the district court's decision.

## II. *Free Speech Claim and Cross–Appeal*

■ The district court correctly held that the City's zoning ordinances are legitimate, content-neutral time, place and manner restrictions, with only a tangential relationship to speech. *See Williams v. City of Columbia,* 906 F.2d 994, 999 (4th Cir.1990); *Guschke v. City of Oklahoma City,* 763 F.2d 379, 385 (10th Cir.1985). Content-neutral zoning ordinances such as these have long been held to be permissible restrictions on free speech. *See, e.g., City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Schroeder v. Municipal Court of Los Cerritos Judicial District,* 73 Cal.App.3d 841, 141 Cal.Rptr. 85 (1977), *appeal dismissed,* 435 U.S. 990, 98 S.Ct. 1641, 56 L.Ed.2d 81 (1978) (limitation of antenna height not "blanket prohibition" on expression). We therefore affirm on this point as well.[7]

■ The City cross-appeals the aspect of the district court's decision which held that it had not "reasonably accommodated" Howard's application. This issue is moot as to Howard, since the City has now granted his permit. *See Kitlutsisti,* 782 F.2d at 801. However, the City urges us to reverse the district court's decision on the basis that it will be forced to hire "expensive experts" to assess future antenna applications, or face losing all control over zoning decisions. This concern seems exaggerated.

It is clear that neither PRB–1 nor the district court's order attempts to invalidate the City's zoning power; in fact, PRB–1 itself refers to "strik[ing] a balance between the federal interest ... and the legitimate interests of local governments in regulating local zoning matters." PRB–1, ¶ 22. Furthermore, the City Council was not required to grant Howard's application, and could very well have limited the height of the antenna or denied the permit outright, after adequate consideration. *See Williams,* 906 F.2d 994 (affirming denial of petition on remand); *Guschke,* 763 F.2d 379 (affirming denial of permit for 78–foot antenna). Finally, nothing in PRB–1 or the district court opinion forecloses the City from shifting the financial burden of evaluating ham radio antenna applications to the applicants, or from adopting the same inexpensive review process it currently utilizes for other building permits. We decline the City's invitation to construct guidelines for handling future applications in accordance with PRB–1, and agree with the F.C.C. that municipalities must evaluate each application on its own merits.

### CONCLUSION

The decision of the district court is AFFIRMED. The City's cross-appeal is DISMISSED as moot. Each party shall bear its own costs.

**6.** It thus stands in sharp contrast to the commerce clause, which was recently held to establish rights enforceable under § 1983. *Dennis v. Higgins,* —— U.S. ——, 111 S.Ct. 865, 872, 112 L.Ed.2d 969 (1991).

**7.** On appeal, Howard also argues that the ordinance and city appeal procedures are void for vagueness and overbreadth under the First Amendment, both on their face and as applied

to his original application. However, Howard failed to present this argument below except in the most cursory way, so we need not address it here. Furthermore, to the extent that the City has now allowed him to erect his antenna without modification, Howard's challenge to the ordinance is moot. *Kitlutsisti v. Arco Alaska, Inc.,* 782 F.2d 800, 801 (9th Cir.1986).