101 F.3d 702
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce BASKIN, Plaintiff-Appellant,
v.
BATH TOWNSHIP BOARD OF ZONING APPEALS, et al., Defendants-Appellees.
 Nos. 95-3042, 95-3881.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1996.
 
 Before: MERRITT, Chief Judge; LIVELY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 In this action challenging restrictions placed by the defendants on plaintiff's proposed construction of radio towers, plaintiff Bruce Baskin, an amateur radio license holder, appeals in 95-3042 the judgment for the defendants on Counts Two, Three, and Six and the refusal of the district court to exercise supplemental jurisdiction over the state law counts--Counts Four and Five. In 95-3881, Baskin appeals the refusal of the district court to enforce injunctive relief on Baskin's behalf to the extent that the court found his claim to be meritorious as to Count One and granted judgment. We affirm the judgment of the district court.
 
 I.
 
 2
 Plaintiff holds an amateur radio operator license issued by the Federal Communications Commission. He applied to the Bath Township Board of Zoning Appeals (BZA) for permission to erect radio towers on his property. BZA's zoning powers include the duty to approve or disapprove the construction of towers exceeding the height restrictions set forth in the Township's Zoning Resolution at Section 301-4(B). The Resolution permits construction of aerials, towers, and other structures of up to 50 feet in height without special approval from BZA and imposes no requirement that these structures be located inside property lines at a distance at least equal to each structure's height.
 
 
 3
 Plaintiff sought to construct radio towers and pads on his property that would range between 65 and 120 feet in height. Plaintiff planned the location and height of each of the four towers with antennas, and one antenna without a tower, in his backyard to achieve maximum capability to engage in local, national, and international radio communications, and eventually to be of assistance to the local authorities during emergencies.
 
 
 4
 After two days of public hearings, BZA approved plaintiff's application over the objection of three of his immediate neighbors and other local residents. However, BZA conditioned its approval on several requirements that are not in dispute and on the disputed requirement that each tower and antenna be located "within the property and from the nearest property line a distance equal to the height of the tower and antenna thereon, so that in the event an antenna topples it cannot fall on abutting property." BZA imposed conditions regarding safety features, landscaping, and height/location for the towers based on its finding that "there is potential danger to anyone, particularly children, climbing the towers, that there is always the potential for a tall narrow structure to be toppled by extreme natural phenomenon, and that proper screening will minimize the negative impact on local property values." However, BZA heard no testimony attacking the structural safety of the towers, and plaintiff, unaware of the concern, had no opportunity to present evidence of the towers' structural stability.
 
 
 5
 BZA has never before imposed the requirement that structures be located such that they cannot fall onto abutting property, and BZA has never before been requested to approve the erection of residential amateur radio antennas in excess of the Resolution's height restrictions. However, in 1983, BZA had granted Complexicable, an entity later determined to be a public utility and therefore not subject to the Resolution, permission to construct a 70 foot tower within ten feet of the site's side boundary and to construct a tower not less than fifteen feet from any property line or street right-of-way.
 
 
 6
 Plaintiff filed a complaint against BZA, the Township, and several BZA members in their official capacities, alleging that the fact that the height/location requirement would adversely affect or prevent his proposed amateur radio communications and that the requirement was completely unnecessary. In his complaint, plaintiff asserted the following causes of action:
 
 
 7
 (1) By imposing the condition limiting the location of the towers, defendants "failed to accommodate Plaintiff reasonably in his intended use of his FCC license, contrary to the requirements of law, as set forth in PRB-1 and as made applicable through the Supremacy Clause of the Constitution."
 
 
 8
 (2) "By imposing a requirement [ (the location condition) ] not made of other similar structures and uses, the [defendants] denied Plaintiff the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution."
 
 
 9
 (3) By imposing the location condition "arbitrarily and without a reasonable basis, which interferes substantially with Plaintiff's exercise of a federally protected right to conduct reasonable amateur radio communications, Plaintiff was denied substantive due process of law, contrary to the Fourteenth Amendment to the Constitution."
 
 
 10
 (4) BZA's resolution deprived plaintiff of inalienable rights, equal protection, and reasonable use of property under Ohio law.
 
 
 11
 (5) Under Ohio law, the location condition was arbitrary, capricious, illegal, unconstitutional, and without the support of the weight of the evidence in the record as a whole.
 
 
 12
 (6) Costs and attorney fees, pursuant to 42 U.S.C. § 1988.
 
 
 13
 In the first four causes of action, plaintiff sought declaratory and injunctive relief as to the location condition; in his fifth cause of action, plaintiff sought modification of BZA's decision; and in his sixth cause of action, plaintiff sought fees and expenses. Plaintiff clarified his second and third causes of action in his Post-trial Reply Brief, stating that only his first cause of action depends upon PRB-1, his licensed status, and the Supremacy Clause; "[t]he Equal Protection and Substantive Due Process claims arise under the Fourteenth Amendment and Section 1983 and are collateral to [plaintiff's] FCC licensed status."
 
 
 14
 The district court dismissed the case on Colorado River abstention grounds, but this court reversed that dismissal and remanded for further proceedings. Baskin v. Bath Township Bd. of Zoning Appeals, 15 F.3d 569 (6th Cir.1994).
 
 
 15
 The district court concluded that the Resolution was facially consistent with PRB-1 in that it did not completely preclude amateur radio communication structures, but that the imposition of the height/location requirement, which would impede radio communications, in the absence of any testimony regarding the probability of a tower ever falling or falling in such a way as to endanger others, constituted a failure to reasonably accommodate plaintiff's amateur radio communications as required by PRB-1. The district court therefore found that the height/location requirement placed on plaintiff's proposed towers was preempted by PRB-1, as plaintiff alleged in his first cause of action. The court rejected plaintiff's substantive due process and equal protection claims.
 
 
 16
 Despite finding that the height/location requirement was preempted by PRB-1, the district court stated that its holding did not "automatically mean that the BZA must approve the particular array of towers which Baskin has proposed," but, rather, only meant that the condition imposed was not a reasonable accommodation in light of the lack of supporting testimony at the hearing. The district court conceived of its ruling as a mere declaration that the height/location requirement was "void and unenforceable," and anticipated "that the parties, upon [plaintiff's] initiative [would] continue their search for a reasonable accommodation."
 
 II.
 A.
 
 17
 The district court concluded that plaintiff's substantive due process claim, which was asserted under 42 U.S.C. § 1983 and the Fourteenth Amendment, had no merit because "there is no unrestricted right, enforceable under Section 1983, to conduct amateur radio communications." We agree.
 
 
 18
 In cases where property owners have protested on substantive due process grounds the denial of special use permits, we have held that plaintiffs must "first establish the existence of a constitutionally-protected property or liberty interest." Silver v. Franklin Township Bd. of Zoning Appeals, 966 F.2d 1031, 1035-36 (6th Cir.1992).
 
 
 19
 The plaintiff's first theory for the establishment of a property interest in his amateur radio communications practice is based on a declaratory ruling issued by the Federal Communication Commission--"Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities." Amateur Radio Preemption, 101 F.C.C.2d 952, 50 Fed.Reg. 38,813 (1985) (codified at 47 C.F.R. § 97.15(e) (1992)) ("PRB-1"). PRB-1 does not appear to create a private right of action enforceable through the Fourteenth Amendment. See, e.g., Howard v. City of Burlingame, 937 F.2d 1376 (9th Cir.1991). PRB-1 lacks two of the essential characteristics of a regulation creating a right enforceable under section 1983: (1) that the provision have been intended by Congress to benefit the plaintiff; and (2) that the provision create a binding obligation on the governmental unit rather than a congressional preference. Cf. Loschiavo v. City of Dearborn, 33 F.3d 548 (6th Cir.1994), cert. denied, 115 S.Ct. 1099 (1995). PRB-1 was intended to benefit federal interests and created no clear command to local governments. Thus, PRB-1 cannot provide a basis for plaintiff's substantive due process claim.
 
 
 20
 To establish the existence of a constitutionally-protected property interest, a plaintiff must prove that, as long as plaintiff complied with certain mandatory requirements, the Board did not have the discretion to deny plaintiff's land-use request. Silver, 966 F.2d at 1036. If the Board has the discretion to deny plaintiff's request despite his compliance with the mandatory requirements, plaintiff has no " 'legitimate claim or entitlement' " or " 'justifiable expectation' " of approval of his plan. Id. (quoting G.M. Eng'rs and Assoc. v. West Bloomfield Township, 922 F.2d 328, 331 (6th Cir.1990) (quoting Olim v. Wakinekona, 461 U.S. 238, 245 (1983) and Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).
 
 
 21
 Applying Silver, this court found in Triomphe Investors v. City of Northwood, 49 F.3d 198, 203 (6th Cir.), cert. denied, 116 S.Ct. 70 (1995), that the city code, providing "[a] special permit may be granted," established sufficient discretion to defeat plaintiff's argument that the language of the zoning regulations created either an entitlement to the desired land use or a justified expectation in the grant of the permit. Where the challenged decision was discretionary, a plaintiff may prevail on a substantive due process claim if he "show[s] that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the ... [administrative] decision." Id. at 201 (internal quotation marks and citation omitted).
 
 
 22
 We conclude that the district court correctly determined that PRB-1 did not render plaintiff's amateur radio license a right enforceable through the Fourteenth Amendment and section 1983. Nor has plaintiff shown that he had an entitlement or justified expectation in issuance of the permit. He does not argue that BZA does not have the discretion to deny, but rather is required to approve, variance applications. Plaintiff has not established any legal entitlement to build antenna towers on his property, and his substantive due process claim is, therefore, meritless.
 
 B.
 
 23
 Plaintiff argues that defendants denied him equal protection by imposing the height/location requirement on his proposed towers, ensuring that his towers could not fall onto abutting property, while at the same time permitting (1) anyone to construct towers up to fifty feet in height with no additional requirement that such towers be set back from the property line so that they could not fall outside of the property, and (2) other applicants to construct towers in excess of fifty feet without a location requirement that would prevent a fall across property lines. The district court concluded that plaintiff's equal protection claim, which was asserted under 42 U.S.C. § 1983, had no merit. The court declined to hold that BZA could never find that amateur radio towers and antennas are different "from the other structures for which exceptions have already been granted or for which no approval is needed." We agree.
 
 
 24
 In Silver, the court noted that the "basis of any equal protection claim is that the state has treated similarly-situated individuals differently." Silver, 966 F.2d at 1036. We have noted previously that, as a definitional matter, "[a]ll zoning plans have inherent within them a discrimination between the various land uses permitted thereunder." Studen v. Beebe, 588 F.2d 560, 565 (6th Cir.1978). Thus, the rational basis test is generally applied to local economic matters, including the quasi-legislative application of zoning regulations, and " 'it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.' " Curto v. City of Harper Woods, 954 F.2d 1237, 1244 (6th Cir.1992) (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976)). "[Z]oning decisions are reviewed to determine whether the classifications drawn by the regulations are rationally related to a legitimate interest of the state or municipality." Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1360 (6th Cir.1992). In Silver, however, we found it unnecessary to apply the rational basis test because the plaintiff failed even "to demonstrate that the Board treated him differently from similarly-situated individuals." Silver, 966 F.2d at 1036. The plaintiff there asserted that the Board had issued permission to other condominium developments but did not present evidence that those other developments were similarly situated to his own. Id. at 1036-37. We conclude that Baskin similarly failed to demonstrate that the board treated him differently from similarly-situated individuals.
 
 
 25
 As in Silver, the plaintiff has not cited any plausibly similarly-situated individuals and therefore does not even have the basis for an equal protection claim. First, plaintiff has not alleged that similarly-situated entities were not required to secure special permission to build. Plaintiff, who seeks to build towers as high as 120 feet, is not similarly-situated to those seeking to build towers under 50 feet high. The Resolution's provision that towers of up to 50 feet may be built without securing special permission or meeting special location requirements is rationally related to legitimate safety concerns. The legislature could well have reasoned that shorter structures are likely to be physically more stable, are less likely to fall at all, and, therefore, did not need to be positioned at a specific distance from property lines. "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think." Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489 (1955).
 
 
 26
 Second, the plaintiff has not alleged that any other similarly-situated persons were granted the unconditioned special permission that he was denied. Plaintiff has not alleged that any private amateur radio users were granted such permission. The comparison plaintiff seeks to make, to the cable company, has not been adequately established as similar. There is nothing in the record to suggest that the cable company was granted permission to build an antenna tower of the same or similar height and structural design as plaintiff's proposed towers, or that it was granted permission to build on the same or similar property or in the same or similar neighborhood. Nor has plaintiff demonstrated that BZA's articulated reasons for denying plaintiff unconditioned permission are completely baseless or equally implicated by the cable company's construction. The board declared "that there is potential danger to anyone, particularly children, climbing the towers, that there is always the potential for a tall narrow structure to be toppled by extreme natural phenomenon, and that proper screening will minimize the negative impact on local property values."
 
 
 27
 The plaintiff's equal protection claim is meritless.
 
 C.
 
 28
 We conclude that the plaintiff did not advance a valid substantive due process or equal protection claim and has not, therefore, stated a valid claim under 42 U.S.C. § 1983. Consequently, he has not shown an entitlement to attorney fees pursuant to 42 U.S.C. § 1988. The fact that the district court found that the height/location requirement was, on the hearing board's record, not a reasonable accommodation and therefore preempted, does not create a basis for a section 1983 action. A claim premised solely on Supremacy Clause preemption "is not cognizable under 42 U.S.C. § 1983." Gustafson v. City of Lake Angelus, 76 F.3d 778, 792 (6th Cir.), petition for cert. filed, 65 U.S.L.W. 3001 (June 14, 1996) (No. 95-2054). As we concluded in Gustafson, "Since plaintiff's alleged violations of due process and equal protection are unmeritorious, the ordinances have not violated any civil right that is redressable under 42 U.S.C. § 1983, and the district court properly denied attorneys fees pursuant to 42 U.S.C. § 1988." Id.
 
 D.
 
 29
 Plaintiff asserted two state law claims. In Count Four, he claimed that the height/location requirement violated Ohio Constitution, Article I §§ 1, 16, and 18. In Count Five, he sought an appeal, pursuant to Ohio Revised Code Chapter 2506, of the administrative decision to impose the restriction. The district court declined to exercise supplemental jurisdiction over these two claims on the authority of 28 U.S.C. § 1367(c)(4), which permits jurisdiction to be declined where "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The district court declined to exercise supplemental jurisdiction because "the state law claims asserted in Counts Four and Five add nothing to this lawsuit and do not provide any form of relief unavailable under the federal claims. In fact, the consideration of state law claims in this case would needlessly complicate matters."
 
 
 30
 We review for abuse of discretion the district court's decision to refuse to exercise jurisdiction over pendent state claims. Landefeld v. Marion Gen. Hosp., 994 F.2d 1178, 1182 (6th Cir.1993).
 
 
 31
 The district court's discretion in determining whether to exercise supplemental jurisdiction is confined by the requirements of 28 U.S.C. § 1367, which provides in relevant part:
 
 
 32
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....
 
 
 33
 ....
 
 
 34
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
 
 
 35
 (1) the claim raises a novel or complex issue of State law
 
 
 36
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 37
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 38
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 39
 (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
 
 
 40
 28 U.S.C. § 1367(a)-(d). Section 1367 was adopted in 1990 to codify the case law doctrines of "pendent" and "ancillary" jurisdiction. The historical notes to section 1367 indicate that the discretionary exceptions to the mandatory conferral of jurisdiction should be interpreted quite narrowly. This court has held generally that "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." Landefeld, 994 F.2d at 1182. Further, it is generally true that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well," Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir.1992), however, dismissal is not mandatory. See, e.g., id.; Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir.1991).
 
 
 41
 In the instant case, the only possible substantial basis for original jurisdiction is the plaintiff's claim of preemption under the Supremacy Clause. While concerns for efficiency and convenience may weigh in favor of exercising jurisdiction, the fact that zoning regulations are of "primarily local concern in which the principles of federalism are particularly strong," Goldberg v. Charter Township of West Bloomfield, No. 90-1039, 1990 WL 208597 * 4 (6th Cir., Dec. 17, 1990) (unpublished), weighs in favor of declining jurisdiction. Even PRB-1, the sole meritorious basis for original jurisdiction, largely defers to the authority of local governing units to apply their zoning ordinances, requiring only that they reasonably accommodate ham radio operators. The federal courts are ill-suited to reviewing the decisions of local zoning boards and their particularly local concerns, especially in a case such as this one where the state claims far outweigh the federal claim. We find that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law claims.
 
 E.
 
 42
 The district court found in a memorandum opinion that the height/location requirement imposed by BZA was not a reasonable accommodation as required by PRB-1. The district court therefore ruled that the condition was preempted by PRB-1 and stated:
 
 
 43
 This holding does not automatically mean that the BZA must approve the particular array of towers which Baskin has proposed. This Court finds only that condition number two is not a reasonable accommodation when viewed in light of the lack of certain direct testimony at the public hearing. Precisely what alternative would constitute a reasonable accommodation this Court cannot say.
 
 
 44
 While finding that the testimony produced in the original hearings was insufficient, the district court determined that it had to allow BZA the opportunity to hear and consider relevant testimony. The district court observed that if it "were to simply step in and draw its own conclusions, it would be making itself into a kind of "super zoning board." The district court stated that it would "leave to the BZA the determination, after hearing competent testimony, regarding precisely what constitutes a reasonable accommodation of federal interests in Baskin's amateur radio communications when balanced against the local government's interests." The district court added that its ruling was a declaration that the height/location requirement was void and unenforceable; the parties would, upon Baskin's initiative "continue their search for a reasonable accommodation." The district court decreed that "for the reasons set forth in the Memorandum Opinion ... judgment is entered in favor of the plaintiff and against the defendants on Count One of the complaint." In the complaint, plaintiff had requested declaratory and injunctive relief for Counts One through Four.
 
 
 45
 Plaintiff sought issuance of a zoning certificate on the strength of the district court's ruling of preemption on Count One as contained in the judgment entered. The Township refused to issue the certificate, and plaintiff filed a Motion to Show Cause seeking "enforcement of the judgment." The district court issued a second order denying plaintiff's motion, finding that it had never issued an injunction but had merely granted a declaratory judgment. The district court noted that its declination of supplemental jurisdiction over Counts Four and Five left plaintiff free to pursue his state law claims in the state courts. Plaintiff appeals from this order.
 
 
 46
 We conclude that the district court clearly did not grant plaintiff injunctive relief. The order entered, in which the district court granted judgment to the plaintiff "on count one," did not specify any injunctive relief. There were no requirements to act affirmatively imposed on the defendants in the order. The order was issued contemporaneously with, and incorporated, the court's initial Memorandum and Order, which in turn explicitly held that BZA did not automatically have to approve the particular array of towers that plaintiff had proposed, and that the parties could, upon plaintiff's initiative "continue their search for a reasonable accommodation" begin a new permission process. The district court was well within its discretion to deny injunctive relief. The district court could not err later in refusing to find that the defendants were in contempt for having declined to grant plaintiff the permission that the district court did not order defendants to grant.
 
 III.
 
 47
 Finding no error in the matters appealed, we AFFIRM the judgment of the district court.
 
 
 48
 MERRITT, Chief Circuit Judge, concurring in part and dissenting in part.
 
 
 49
 I concur in Sections I through IID of the Court's opinion, but I disagree with Section IIE in which the Court refuses to provide any remedy to carry out the conclusion of the District Court that the height/location requirement is invalid under PRB-1. The Township has not appealed this conclusion of the court below, and it is now final. A wrong of this type--the failure to observe the requirements of a federal statute--deserves a remedy. I would remand the case to the District Court with instructions to issue an injunction responsive to the wrong, namely, an injunction requiring the Township Board to show cause why the permit to build should not be granted without the conditions found to be offensive under federal law. A Court is not a legislative body which simply writes laws in the abstract. We adjudicate disputes. When the defendant has deprived the plaintiff of a federal right--a proposition now conceded in this case--a court has an obligation to devise a remedy to correct the wrong. The Township Board should be required to conduct another hearing on this matter in compliance with PRB-1.