**Derek R. HENKLE, Plaintiff,**

**v.**

**Ross GREGORY, in his official and individual capacity, Denise Hausauer, Loretta Rende, Joe Anastasio, Robert Floyd, Serena Robb, Arnel Ramilo, and Glen Selby, in their individual capacities; and the Washoe County School District, a political subdivision of the State of Nevada, Defendants.**

**No. CV–N–00–050–RAM.**

United States District Court, D. Nevada.

Feb. 28, 2001.

Kent R. Robison, Robinson, Belaustegui, Sharp & Low, Reno, NV, Michael F. Tubach, Peter Obstler, Luann L. Simmons, O'Melveny & Myers LLP, San Francisco, CA, Jon W. Davidson, Lambda Legal Defense & Education Fund, Inc., Los Angeles, CA, for Plaintiff.

C. Robert Cox, Michael E. Malloy, Christopher D. Jaime, Rick R. Hsu, Walther, Key, Maupin, Oats, Cox & LeGoy, Reno, NV, for Defendants.

## MEMORANDUM DECISION AND ORDER

MCQUAID, United States Magistrate Judge.

Before this court is Defendants' Motion to Dismiss (Doc. # 27). Plaintiff has opposed the motion (Doc. # 28) and Defendants have replied (Doc. # 35).

## BACKGROUND

Plaintiff, Derek R. Henkle, began his freshman year, in 1994, at Galena High School ("Galena") after skipping the eighth grade.[1] (Doc. # 22, pp. 4–5). In Fall 1995, Plaintiff appeared on the local access channel's program "Set Free" where he participated in a discussion about gay high school students and their experiences. (Id. at 5). From this point on, the alleged harassment began. Plaintiff alleges that, during school hours and on school property, he endured constant harassment, assaults, intimidation, and discrimination by other students because he is gay and male and school officials, after being notified of the continuous harassment, failed to take any action. (Id.).

One incident of alleged harassment occurred in Fall 1995. Several students approached Plaintiff, on Galena property, calling him "fag," "butt pirate," "fairy," and "homo." They lassoed him around the neck and suggested dragging him behind a truck. (Id. at 6). Plaintiff escaped to a classroom and used an internal phone to report the incident to Defendant, Assistant Vice Principal Hausauer. After waiting nearly two hours, Defendant Hausauer arrived and responded with laughter. Defendant, Principal Gregory, was also made aware of the incident, but they took no action against the alleged harassers despite knowing their identities. (Id.).

Another alleged incident occurred in Plaintiff's English class. Students in the class continuously wrote the word "fag" on the whiteboard and sent him notes calling him "fag." Students also drew sexually explicit pictures and called Plaintiff's attention to them. Defendant Rende, Plain-

---

1. Because, in a motion to dismiss, the complaint should be liberally construed in favor of the plaintiff, and its factual allegations taken as true, the recitation of facts are taken from plaintiff's first amended complaint (Doc. # 22) and opposition (Doc. # 28). *See Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 785 (9th Cir.1992), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

tiff's English teacher, was allegedly aware of the harassment and identity of the harassers. Despite this knowledge, Defendant Rende chose to tell Plaintiff that his sexuality was a private matter that should be kept to himself, rather than end the harassment or discipline the harassers. Plaintiff alleges that Defendants Gregory and Hausauer also knew of this incident, yet did nothing to remedy the situation. (Id. at 6–7).

Plaintiff also faced harassment when reporting the incidents to Galena's discipline office. (Id. at 7). Several students, running by the office and shouting anti-gay epithets, threw a metal object at the Plaintiff that missed him and stuck in the wall. A school administrator witnessed this incident and a report was filed. (Id.). Again, it is alleged that no investigation was made or discipline taken, despite the fact that school administrators were aware of the incident. Plaintiff suffered an emotional breakdown because of this episode. (Id.).

At the end of the Fall 1995 semester, Plaintiff asked to leave Galena because he feared further harassment and assaults. (Id. at 8). Defendant Anastasio[2] decided to transfer Plaintiff to Washoe High School ("Washoe"), an alternative high school. Plaintiff's transfer allegedly was conditioned on the fact that he keep his sexuality to himself. (Id.). During Plaintiff's time at Galena, he wore buttons on his backpack that said "We are everywhere" and "Out," however, upon his transfer to Washoe, he removed the buttons. (Id.).

Defendant Floyd was the Principal at Washoe during Plaintiff's tenure from January 1996 to May 1996. Defendant Floyd, on several occasions, allegedly told Plaintiff to keep quiet about his sexual orientation and during one meeting with Plaintiff, Floyd told him to "stop acting like a fag."

(Id.). On some occasions, Plaintiff expressed his viewpoints and identity, but for the most part kept them to himself. Finally, Plaintiff requested a transfer because of the lack of educational opportunities at Washoe. (Id. at 8–9). Plaintiff alleges that Floyd initially told him the transfer was not possible because Plaintiff was openly gay and a traditional high school would not be appropriate. (Id.).

Plaintiff was subsequently transferred to Wooster High School ("Wooster") and, once again, prior to the transfer, was told by Floyd to keep his sexuality to himself. (Id. at 9). When Plaintiff's classmates, at Wooster, learned his identity and the fact that he was gay, they allegedly harassed and intimidated him during school hours and on school property. Plaintiff reported the incidents several times, however, he alleges the administration took no action. (Id. at 10).

One particular incident of inaction occurred when Plaintiff was assaulted at Wooster. Several students approached him shouting gay epithets, and one student punched him in the face, calling him "bitch." The other students encouraged the attack. (Id.). School police, Defendants Ramilo and Selby, allegedly witnessed the attack, but did nothing. In fact, Plaintiff alleges Defendants Ramilo and Selby discouraged him from calling the assault a hate crime and from reporting it to the Reno Police Department. Furthermore, Defendants refused to arrest the attacker despite knowing the identity. (Id. at 11).

After this incident, Defendants Floyd and Anastasio agreed that Plaintiff should be transferred back to Washoe. However, Floyd later decided not to accept Plaintiff at Washoe despite having room for him.

---

**2.** Defendant Anastasio, as of the time of this motion, has not been served because it is believed that he is no longer living in the United States and Plaintiff has not been able to locate Anastasio's whereabouts for international service. (Doc. # 28, p. 1).

Instead, Defendants placed Plaintiff in an adult education program at Truckee Meadows Community College, thus making Plaintiff ineligible for a high school diploma because he was no longer enrolled in a public high school. (Id. at 11–12).

This lawsuit followed as a result of Defendants' actions. At issue in Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim are: claims One and Two for violations of the Equal Protection Clause of the Fourteenth Amendment based upon sexual orientation and sex, respectively, both of which are brought pursuant to 42 U.S.C. § 1983; claims Three and Four for violations of the First Amendment based upon suppression of protected speech and retaliation for engaging in protected speech, respectively, both of which are brought pursuant to 42 U.S.C. § 1983; claims Seven, brought pursuant to 42 U.S.C. § 1983, and Eight, brought pursuant to 20 U.S.C. § 1681 et seq. (Doc. # 22, p. 23),[3] for violations of Title IX for deprivation of educational benefits on the basis of sex and for allowing peer harassment on the basis of sex, respectively; and claims for punitive damages[4]. (Doc. # 27, pp. 3–4).

For the claims at issue, Plaintiff sued Defendants Gregory, Anastasio, Floyd, Hausauer, Rende, Robb, Ramilo, and Selby in their individual capacities and also sued Gregory in his official capacity. (Doc. # 22, pp. 16–19, 22–23; Doc. # 27, p. 3). Plaintiff seeks compensatory and punitive damages from the Defendants in their individual capacities and the Washoe County School District ("WCSD") and injunctive relief from Defendant Gregory in his official capacity. (Doc. # 22, pp. 16–27).

## STANDARD FOR REVIEW

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Inter'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir.1983) (citation omitted). In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996) (citation omitted). For a defendant-movant to succeed, it must appear to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Id.* at 338. A complaint may be dismissed as a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir.1996) (quoting *Robertson v.*

---

3. Although Plaintiff's Eighth Claim for Relief is brought pursuant to 20 U.S.C. § 1681 et seq. (Doc. # 22, p. 23), the court believes that Plaintiff's intention was to bring it pursuant to 42 U.S.C. § 1983. Defendants, in their Motion to Dismiss, refer to Plaintiff's Eighth Claim for Relief as being brought pursuant to 42 U.S.C. § 1983 (Doc. # 27, p. 4), and Plaintiff, in his opposition, refers to the claim as being brought under 42 U.S.C. § 1983 (Doc. # 28, p. 13). Thus, the court will assume that Plaintiff meant to bring his Eighth Claim for Relief pursuant to 42 U.S.C. § 1983 and proceed in its analysis based upon this assumption.

4. Plaintiff also brought claims, not at issue in this Motion to Dismiss, against Washoe County School District for violations of Title IX for deprivation of educational benefits on the basis of sex (Fifth Claim for Relief) and for allowing peer harassment on the basis of sex (Sixth Claim for Relief) (Doc. # 22, pp. 20–21). Plaintiff also brought various state law tort claims for Negligence (Ninth Claim for Relief), Negligent Training and Supervision (Tenth Claim for Relief), Intentional Infliction of Emotional Distress (Eleventh Claim for Relief), and Negligent Infliction of Emotional Distress (Twelfth Claim for Relief). (Id. at 24–27).

*Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984)).

## DISCUSSION

**I. Are Plaintiff's First, Second, Seventh and Eighth Claims Brought Pursuant to § 1983 Subsumed by the Title IX claims?**

■ The issue before the court is whether a § 1983 action may be brought based upon an alleged violation of Title IX (Seventh and Eighth Claims for Relief), and, even if those claims are subsumed in Title IX, can a § 1983 action based upon a violation of equal protection (First and Second Claims for Relief) be maintained. This is a question of first impression in this court and in this circuit.

42 U.S.C. § 1983 provides a cause of action to a plaintiff when a person acting under color of state law subjects that plaintiff to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983 (1994). In 1980 the Supreme Court broadly construed the "laws" language of the statute and held that § 1983 "laws" encompassed all statutory violations of federal law. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (specifically construing a Social Security Act violation). One year later, the court limited the *Thiboutot* holding in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), when it held that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 20, 101 S.Ct. at 2626. The court has also held that federal statutes can also preempt a § 1983 constitutionally based claim which relies on the same factual predicate as the statutory violation. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct.

3457, 82 L.Ed.2d 746 (1984). "The burden to demonstrate that congress has expressly withdrawn the [§ 1983] remedy is on the defendant." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989).

The Ninth Circuit has recognized the *National Sea Clammers* preemption doctrine in construing a claim under the Education for All Handicapped Childrens Act of 1975, 20 U.S.C. § 1401 et seq. in *Department of Education, State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir.1984) ("The Supreme Court has consistently indicated that the benefits of an action under 42 U.S.C. § 1983 are unavailable 'where the governing statute provides an exclusive remedy for violation of its terms.' (citations omitted). Where congress has provided a comprehensive enforcement and remedial scheme in enacting a regulatory statute, the Supreme Court has held, we must read the statute 'to supplant any remedy that would otherwise be available under § 1983.' (citation omitted).") *Id.* at 819.

The Ninth Circuit has also recognized that § 1983 actions were not available under other federal statutes. *See, for example, Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172 (9th Cir.1989) (Agriculture Credit Act of 1987, 12 U.S.C. §§ 2001–2279aa–14); *Howard v. City of Burlingame*, 937 F.2d 1376 (9th Cir.1991) (Federal Communications Act of 1934, 47 U.S.C. § 151 et seq.); *Associated General Contractors v. Smith*, 74 F.3d 926 (9th Cir.1996) (Employment Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1988)); *Dumas v. Kipp*, 90 F.3d 386 (9th Cir.1996) (Higher Education Act, 20 U.S.C. § 1078–81); *Almond Hill School v. U.S. Dept. of Agriculture*, 768 F.2d 1030 (9th Cir.1985) (Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq.);

*Dittman v. California,* 191 F.3d 1020 (9th Cir.1999) (Privacy Act, 5 U.S.C. § 552a); *Meyerson v. State of Ariz.,* 709 F.2d 1235 (9th Cir.1983) (Rehabilitation Act, 29 U.S.C. § 793); *Boatowners & Tenants Ass'n v. Port of Seattle,* 716 F.2d 669 (9th Cir.1983) (River and Harbor Improvements Act, 33 U.S.C. §§ 540–633).

The circuits that have looked at the enforceability of Title IX through § 1983 are equally split. The Third[5], Seventh[6], and Second[7] Circuits have held that § 1983 claims are preempted by Title IX, while the Sixth[8], Eighth[9], and Tenth[10] Circuits have taken a contrary position. The court believes that the approach of the Third, Seventh and Second Circuits is persuasive.

Title IX contains a comprehensive administrative enforcement scheme which includes administrative hearings and judicial review. *See* 34 C.F.R. § 100.1 et seq.

In addition to this administrative scheme, the Supreme Court in 1979 held that Title IX was enforceable by an individual through an implied right of action. *See Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The court later held that an individual exercising her implied right of action under Title IX has access to all appropriate remedies, including equitable relief and damages. *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

The court in *Franklin* noted that after its decision in *Cannon,* Congress had on two occasions amended Title IX, which actions "cannot be read except as vali-dation of *Cannon's* holding." 503 U.S. at 72, 112 S.Ct. 1028. Regarding the first amendment in 1986, the court noted that "A subsection of the 1986 law provides that in a suit against a state, 'remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a state.' 42 U.S.C. § 2000d–7(a)(2)." *Id.* at 72, 73, 112 S.Ct. 1028. The court noted that in the second amendment to the statute in 1987 "Congress made no effort to restrict the right of action recognized in *Cannon* and ratified in the 1986 Act or to alter the traditional presumption in favor of any appropriate relief for violation of a federal right. We cannot say, therefore, that Congress has limited the remedies available to a complainant in a suit brought under Title IX." *Id.* at 73, 112 S.Ct. 1028. "The availability of a private judicial remedy is further evidence of a congressional intent to supplant a § 1983 remedy." *Bruneau, supra,* at 755 (citing *Wright v. City of Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 427, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Marshall v. Switzer,* 10 F.3d 925, 930 (2nd Cir.1993)).

Given the Supreme Court decisions and the intervening congressional action, we conclude that Congress intended to create a private right of action in Title IX to secure enforcement of its provisions and that this implied right of action is part of Title IX's enforcement scheme. When combining Title IX's administrative reme-

---

**5.** *Pfeiffer v. Marion Center Area School Dist.,* 917 F.2d 779 (3rd Cir.1990).

**6.** *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996); *Boulahanis v. Board of Regents,* 198 F.3d 633 (7th Cir.1999) (following *Waid*).

**7.** *Bruneau v. South Kortright Central School Dist.,* 163 F.3d 749 (2nd Cir.1998).

**8.** *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716 (6th Cir.1996).

**9.** *Crawford v. Davis,* 109 F.3d 1281 (8th Cir. 1997).

**10.** *Seamons v. Snow,* 84 F.3d 1226 (10th Cir. 1996).

dies and private right of action, "the remedial devices provided in [Title IX] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983." *National Sea Clammers, supra,* at 20, 101 S.Ct. at 2626. Therefore, Plaintiff's Seventh and Eighth Claims for Relief should be dismissed.

■ Plaintiff claims that even if the Seventh and Eighth Claims for Relief are subsumed in Title IX, his First and Second Claims for Relief are constitutional claims based on a violation of equal protection and Title IX does not foreclose these claims under § 1983. It is acknowledged that the factual basis for the claims under Title IX and the constitutional claims are the same.

In *Katherine D., supra,* the Ninth Circuit recognized that "The comprehensive nature of the remedies laid out in the EAHCA evinces a congressional intent to preclude reliance on either a statutory or a constitutional cause of action under § 1983." 727 F.2d at 820, fn. 15. In *Smith v. Robinson, supra,* the Supreme Court held that where Congress had crafted a comprehensive scheme for enforcement of an act (The Education of the Handicapped Act, 20 U.S.C. § 1400 et seq. in that case) it would be inconsistent to allow a plaintiff to circumvent that scheme by pursuing an equal protection claim under § 1983 based upon the same set of facts.

Given our holding that § 1983 actions based on Title IX are subsumed by Title IX, it would be inconsistent and contrary to the above authority to allow Plaintiff to pursue constitutional claims through § 1983 based on the identical facts as the Title IX claims. To hold otherwise would be to create an exception to the *Sea Clammers'* doctrine that does not exist, *Bruneau, supra,* 757, 758, and would allow Plaintiff to do indirectly what he cannot do directly.

Plaintiff's First, Second, Seventh and Eighth Claims brought pursuant to § 1983 should be dismissed.

## II. Violation of Plaintiff's First Amendment Rights

Plaintiff's Third and Fourth Claims for Relief allege Defendants violated his First Amendment rights by censoring, chilling, and deterring him from exercising his right to freedom of speech and by retaliating against him when he did exercise his rights. (Doc. # 22, pp. 18–19).

*Protected Speech*

"Students in public schools do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). "[S]chool officials cannot suppress expressions of feelings with which they do not wish to contend." *Id.* at 511, 89 S.Ct. at 739 (quoting *Burnside v. Byars,* 363 F.2d 744, 749, (5th Cir.1966)). Thus, "[i]n the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to expression of their views." *Id.* Students' speech may be regulated where defendants show that engaging in forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id.* at 509, 89 S.Ct. at 738 (quoting *Burnside,* 363 F.2d at 744).

Defendants argue that they did not violate Plaintiff's First Amendment rights because his speech was disruptive and as such was subject to being suppressed and regulated by Defendants.

■ In *Chandler v. McMinnville School Dist.,* 978 F.2d 524, 529 (9th Cir.1992), the

court recognized three distinct areas of student's speech based on Supreme Court precedent: "(1) vulgar, lewd, obscene, and plainly offensive speech, (2) school sponsored speech, and (3) speech that falls into neither of these categories." The speech involved in the present case falls into the third category. As such "To suppress speech in this category, school officials must justify their decision by showing 'facts which might reasonably have lead school authorities to forecast substantial disruption of or material interference with school activities.'" *Id.* at 529 (citing *Tinker, supra,* 393 U.S. at 514, 89 S.Ct. at 740).

At this stage of the proceeding, we cannot say, as a matter of law, that Plaintiff's speech caused a "substantial disruption of or material interference with school activities", or that Defendants might reasonably have believed such disruption or interference would likely occur. Although there are instances of alleged harassment set forth in the First Amended Complaint, it cannot be said, as matter of law at this stage of the proceedings, that these instances substantially or materially interfered with school activities. Thus, we cannot say at the motion to dismiss stage, that Plaintiff has failed to state a claim for relief in his third claim.

*Retaliation*

In examining a First Amendment retaliation claim, courts engage in yet another three part inquiry. For the first two prongs of the inquiry, plaintiff must demonstrate: (1) the speech at issue was constitutionally protected; and (2) the speech was a substantial or motivating factor in the adverse action. *Moran v. State of Washington,* 147 F.3d 839, 846 (9th Cir. 1998); *Brewster v. Bd. of Educ.,* 149 F.3d 971, 978 (9th Cir.1998). If plaintiff satisfies this burden, the burden shifts to the defendants to demonstrate they would have taken the same actions against plaintiff, even in the absence of his protected conduct. *Id.*

In light of the previous discussion, Plaintiff satisfied element one by alleging that his speech was constitutionally protected. (Doc. # 22, p. 7–9, 11). Thus, we will turn our attention to element two.

Plaintiff alleges several actions and/or inactions by Defendants that warrant the inference that the actions and/or inactions were retaliatory in nature. *See Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir.1998) (citation omitted) (stating "[c]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss"). He alleges that after his appearance on "Set Free" where he participated in a discussion about gay high school students and their experiences, the harassment began at Galena and, ultimately, resulted in his transfer to Washoe, an alternative high school. (Doc. # 22, p. 5). Plaintiff also alleges, rather than disciplining the harassers, Defendants treated him as the problem (Doc. # 22, p. 3) and told him numerous times to keep his sexuality to himself. (Id. at 6–9). Plaintiff further alleges, his first transfer from Galena to Washoe was conditioned on the fact that he keep his sexuality to himself. (Id. at 8). In an effort to comply with this request, he removed buttons, pertaining to his sexuality, from his backpack. (Id. at 6–9). Moreover, Defendants transferred Plaintiff, a gifted and talented student, to Washoe, and alternative education program (Doc. # 28, p. 4). Furthermore, when he asked for a transfer from Washoe because of lack of educational opportunities, Defendant Floyd told him the transfer was not possible because he was openly gay and a traditional high school was not appropriate, but was eventually transferred to Wooster. (Doc. 22, p. 9). And finally, after Plaintiff continued to express his sexuality at Wooster, he was denied a

transfer back to Washoe, and instead was transferred to an adult education program where he could not receive a high school diploma because he was no longer enrolled in a public high school. (Doc. # 22, p. 11).

Thus, at this stage of the proceedings, Plaintiff has made sufficient allegations, that his constitutionally protected speech was a substantial motivating factor in adverse action directed at him. Therefore, this court cannot say as a matter of law that Plaintiff failed to state a claim for retaliation for exercising his First Amendment rights.

*Qualified Immunity*

■ Defendants assert they are entitled to qualified immunity because there was no clearly established right for a gay student to speak about or express his sexual preference in a school setting (Doc. # 27, p. 19).

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). "A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Osolinski v. Kane,* 92 F.3d 934, 936 (9th Cir.1996) (alterations in original) (citations omitted). Determining whether a public official is entitled to qualified immunity "requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" *Browning v. Vernon,* 44 F.3d 818, 822 (9th Cir.1995) (citing *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993)).

Defendants contend that the established constitutional right must be narrowly particularized, rather than generalized. They assert that without a case which specifically concerns sexual orientation speech by students there can be no clearly established law prior to 1997. The court disagrees.

In *Tinker, supra,* the Supreme Court clearly established that students in public schools have the right to freedom of speech and expression. *Tinker,* 393 U.S. at 506, 89 S.Ct. at 736. This is a broad right that would encompass the right of a high school student to express his sexuality. In *Chandler, supra,* the Ninth Circuit discussed in detail categories of student's speech. The court set forth two specific categories and a third category of "speech that falls into neither of these categories". 978 F.2d at 529. This category clearly encompasses various types of speech, including the type involved with the Plaintiff. To require Plaintiff to particularize and prove the clearly established right that Defendants suggest would circumvent the right established by the Supreme Court. *See Seamons v. Snow,* 84 F.3d 1226, 1237 (10th Cir.1996)(quoting *Hilliard v. City and County of Denver,* 930 F.2d 1516, 1518 (10th Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991)) (stating "[t]he plaintiff need not show the specific action at issue has been previously held unlawful, he need only show that the alleged unlawfulness was apparent in light of preexisting law"). If Defendants' argument were to be accepted it would allow future Defendants to abuse the "clearly established right" standard so that each time a new fact situation arose they would be entitled to qualified immunity.

Because the law was clearly established and the facts concerning what the Defendants knew or did are in dispute, "it is clear that these are questions of fact for

the jury to determine." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1099 (9th Cir.1995); *see also Katz v. United States,* 194 F.3d 962, 969 (9th Cir.1999) (holding that if disputed facts prevent the court from deciding whether excessive force was used as a matter of law, then the court cannot decide whether officials are entitled to qualified immunity for the use of that force as a matter of law either).

The Defendants are not entitled to qualified immunity as a matter of law.

### III. Plaintiff's Claims for Punitive Damages

In view of the court's rulings above, the punitive damages claims at issue in Defendants' motion are the claims against the individual Defendants in the Third and Fourth Claims for Relief and the punitive damages claim against the Washoe County School District in the Fifth and Sixth Claims for Relief.

■■ In the Third and Fourth Claims for Relief Plaintiff sues Defendant. Gregory in his official capacity and Defendants Anastasio, Gregory, Hausauer, Rende, Floyd, Robb, Ramilo and Selby in their individual capacities (Robb is not a Defendant in the Third Claim for Relief). Punitive damages are available against government officials in their individual capacities under § 1983, but not in their official capacities. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514 (9th Cir.1999). Therefore, the Third and Fourth Claims for Relief state claims for punitive damages against all Defendants named in their individual capacity, but not Defendant Gregory in his official capacity.

Whether punitive damages are available under Title IX is not as clear. Recent decisions of the Supreme Court, however, give some guidance.

In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the court concluded that Title IX authorized a plaintiff to recover money damages from a school district.

More recently, the court held that in a case of alleged teacher-student sexual harassment "that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond. We think, moreover, that the response must amount to deliberate indifference to discrimination." *Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998). In that case the plaintiff sought both compensatory and punitive damages. *Id.* at 279, 118 S.Ct. 1989.

The court followed *Gebser* in *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and allowed a claim for compensatory and punitive damages to go forward and concluded "that recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646–47, 119 S.Ct. 1661.

In a recent decision, the Ninth Circuit adopted the framework set out in *Davis* and set forth four requirements for imposition of school district liability under Title IX for student-student sexual harassment: (1) the school district "must exercise substantial control over both the harasser and the context in which the known harassment occurs", (2) the plaintiff must suffer "sexual harassment ... that is so severe,

pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school", (3) the school district must have "actual knowledge of the harassment", and (4) the school district's "deliberate indifference subjects its students to harassment". *Reese v. Jefferson School District No. 14J,* 208 F.3d 736, 739 (9th Cir.2000) (quoting *Davis,* 119 S.Ct. at 1672, 1675).

Deliberate indifference is defined in this circuit as "the conscious or reckless disregard of the consequences of ones acts or omissions". *See* 9th Cir. Civ. Jury Instr. 11.3.5 (1997) (citing *Redman v. County of San Diego,* 942 F.2d 1435, 1442 (9th Cir. 1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992)). Reckless or callous disregard of or indifference to the rights of others is sufficient to sustain an award of punitive damages. *See Smith v. Wade, supra.*

Given the requirement of actual knowledge and deliberate indifference to establish liability under Title IX, we believe, depending on the facts of a particular case, a punitive damages instruction may be warranted for violation of Title IX, and, therefore, we cannot say that, as a matter of law, Plaintiff's claims for punitive damages in his Fifth and Sixth Claims for Relief should be dismissed.

### CONCLUSION

**IT IS HEREBY ORDERED:**

Defendants' Motion to Dismiss Plaintiff's First, Second, Seventh and Eighth Claims for Relief is *GRANTED.*

Defendants' Motion to Dismiss Plaintiff's Third and Fourth Claims for Relief is *DENIED.*

Defendants' Motion to Dismiss the punitive damages claims against Defendant Gregory in his official capacity in the Third and Fourth Claims for Relief is *GRANTED.*

Defendants' Motion to Dismiss Plaintiff's claims for punitive damages against the Defendants in their individual capacities in the Third and Fourth Claims for Relief and his claims for punitive damages against the Washoe County School District in the Fifth and Sixth Claims for Relief is *DENIED.*