Jacob **PINARD**, Mark Lipke, Griffin Linn, Harry Mills, Tyson Jarvi, Travis Jeffers, Nathan White, and D.J. Crawford, Plaintiffs,

v.

**CLATSKANIE SCHOOL DISTRICT GJ,** Jeff Baughman, Michael Wallace, and Earl Fisher, Defendants.

No. CIV. 03–172–HA.

United States District Court, D. Oregon.

June 3, 2004.

Michael R. Seidl, Seidl Law Office, Portland, OR, for Plaintiffs.

Peter R. Mersereau, Mersereau & Shannon LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

HAGGERTY, Chief Judge.

Before the court is defendants' Motion for Summary Judgment (Doc. # 26). For the reasons stated below, defendants' motion is granted.

### FACTUAL BACKGROUND

Plaintiffs are former members of the Clatskanie High School varsity boys' basketball team. In November 1999, defendant Jeff Baughman (Baughman) became the head coach of the team. According to plaintiffs, Baughman used harsh language with plaintiffs and was intimidating.

On February 13, 2001, plaintiffs delivered a petition signed by ten members of the team to Baughman requesting his resignation. The other two members of the team—the coach's son and a foreign exchange student—were not asked to sign. The petition stated:

As of February 12, 2001, the Clatskanie Tigers Boys Varsity Basketball Team would like to formally request the immediate resignation of coach Jeff Baugh-

man. As a team, we no longer feel comfortable playing for him as a Coach. He has made derogative remarks, made players uncomfortable playing for him, and is not leading the team in the right direction. We feel that as a team and as individuals we would be better off if we were to finish the season with a replacement coach. We, the undersigned, believe this is in the best interest of the team, school, town, and for the players and fans. We would appreciate the full cooperation of all the parties involved. Compl. ¶ 14.

Baughman received the petition the next day. He did not resign. He gave the petition to the principal, defendant Mike Corley (Corley).

Corley and Athletic Director Les Wallace (Wallace) approached plaintiffs to discuss the petition. They presented two options to plaintiffs: plaintiffs could participate in a mediation process with Corley and Wallace serving as the mediators, or plaintiffs could decide to not board the bus for the "away" game that evening and forfeit their privilege to play in that game.

Plaintiffs did not board the bus and were suspended from the team. On February 15, 2001, plaintiffs and some of their parents met with Corley and Wallace in order to voice their concerns about Baughman. Corley and Wallace informed plaintiffs that if plaintiffs wanted to appeal their suspension from the team, they could go through the school's grievance procedure. Plaintiffs filled out grievance forms and submitted them to the superintendent, Earl Fisher (Fisher). Fisher assigned Mary Mitchell (Mitchell), a part-time special education administrator, to investigate the grievances. On February 16, 2001, plaintiffs met with Mitchell. On February 21, 2001, Mitchell issued a decision affirming plaintiffs' indefinite suspension from the team, without any other comments.

Mitchell's decision was then adopted by the school board. Plaintiffs then filed this lawsuit.

### STANDARDS

Summary judgment is required when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505.

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir.2000). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Texas Partners v. Conrock Co.,* 685 F.2d 1116, 1119 (9th Cir.1982). When different ultimate inferences may be drawn, summary judgment is inappropri-

ate. *Jewel Co., Inc. v. Pay Less Drug Stores, N.W., Inc.,* 741 F.2d 1555, 1566 (9th Cir.1984).

## ANALYSIS

Plaintiffs allege that defendants violated their First Amendment rights by punishing them for speaking out against Baughman, requesting his resignation, and complaining about defendants' actions.

■ To make out a First Amendment claim for retaliation when a defendant is neither an employer nor in a contractual relationship with the plaintiff, the plaintiff must show that: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendant's adverse action was substantially motivated by the protected activity. *See Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000); *Cain v. Tigard–Tualatin Sch. Dist.,* 262 F.Supp.2d 1120, 1129–30 (D.Or.2003).

It is well-settled that students do not "shed their constitutional rights to freedom of speech of expression at the schoolhouse gate." *Tinker v. Des Moines Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). However, it is equally clear that school authorities have a strong and valid interest in maintaining school discipline and in carrying out their educational mission. The First Amendment rights of public school students "are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Accordingly, in the pursuit of pedagogical goals, school authorities are entitled to regulate speech in a way that would be impermissible outside the school context.

The Supreme Court and the Ninth Circuit have recognized that courts are not necessarily in the best position to determine whether speech restrictions at school are appropriate. *See, e.g., Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (stating that the court should not intervene in the operations of schools unless basic constitutional values are directly and sharply implicated); *Fraser,* 478 U.S. at 683, 685, 106 S.Ct. 3159 (recognizing that the determination of what manner of speech is unacceptable properly rests with the school board and not with the federal courts); *King v. Saddleback Junior Coll. Dist.,* 425 F.2d 426, 427–28 (9th Cir.1970).

■ There are three distinct areas of student speech that the Supreme Court has identified: (1) obscene, vulgar, and plainly offensive speech; (2) speech that bears the imprimatur of the school; and (3) speech that falls into neither of these two categories. In *Fraser,* the Supreme Court held that a school's interest in prohibiting vulgar and lewd speech outweighs whatever First Amendment interests a student might have. *Fraser,* 478 U.S. at 683–85, 106 S.Ct. 3159. The Supreme Court has also held that when a school sponsors an activity in such a way that students and others may reasonably perceive the activity as bearing the school's imprimatur, the school has the right to restrict student speech. *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). Speech that falls into neither of these two categories is governed by the standards set forth in *Tinker. Chandler v. McMinnville Sch. Dist.,* 978 F.2d 524, 529 (9th Cir.1992). For speech that is neither vulgar, plainly offensive, nor bears the imprimatur of the school, school officials must justify their decision by showing "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Id.* (quoting *Tinker,* 393 U.S. at 514, 89 S.Ct. 733).

In *Tinker*, the Court held that the First Amendment rights of several students were abridged when they were suspended for wearing black armbands in school as a symbol of opposition to the Vietnam War. *Tinker*, 393 U.S. at 513–14, 89 S.Ct. 733. The Court explained that the school could not restrain such speech unless it was likely to lead to substantial disruption of or material interference with school activities. *Id.* at 509–11, 89 S.Ct. 733.

The *Chandler* case arose in the context of a lawful strike by teachers at McMinnville High School. Students wore buttons and stickers showing support for the striking teachers and their disapproval of the "scab" replacement teachers. *Chandler*, 978 F.2d at 526. The court found that the students' speech fell into the third category and held that the "scab" buttons worn by the students were not inherently disruptive. *Id.* at 530–31. Because the court found that it could not be said that plaintiffs could present no evidence in support of their claim, the court denied the school's motion to dismiss. *Id.*

Although the court in *Chandler* supposed that speech that is neither obscene nor bears the imprimatur of the school is governed by the standards set forth in *Tinker*, the speech in both *Tinker* and *Chandler* was political in nature and touched on a matter of public concern. In *Tinker*, despite the school's claim that the ban was merely a regulation of the "manner" of expression, the Supreme Court concluded that it was really motivated by the school's desire to avoid dealing with the controversial nature of the subject matter (anti-war sentiment). In reaching this conclusion, the Court relied on the fact that other ideological symbols that could be or were worn by students, such as political buttons, were not proscribed. Similarly, in *Chandler*, the court found that the students' buttons expressed a position on a local political issue and that the

school could not forbid them absent a showing that the wearing of the buttons caused a substantial or material disruption to school activities. *Chandler*, 978 F.2d at 530; *see also Cain*, 262 F.Supp.2d at 1127 (allegations that the coach was abusive toward the players and covered up a party involving minors and the use of alcohol was clearly a matter of public concern).

Plaintiffs argue that this court is bound by its earlier determination in defendants' Motion to Dismiss. This argument is without merit. On a motion to dismiss, the court's review is based on the contents of the complaint, the allegations of which the court accepts as true and construes in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). A court should not grant a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Conversely, on a motion for summary judgment, the court must go beyond the pleadings to determine whether there is a genuine issue for trial. *Magana v. Com. of N. Mariana Islands*, 107 F.3d 1436, 1447 (9th Cir.1997). In the court's Order regarding defendants' Motion to Dismiss, the court applied this test and concluded that on the face of the complaint, it did not appear that plaintiffs could prove no set of facts in support of their claim that defendants had violated their First Amendment rights. *See* Opinion and Order dated June 3, 2003. Accordingly, the court denied in part defendants' motion.

However, after reviewing the allegations through the lens of a motion for summary judgment, the court holds that plaintiffs were not engaged in a constitutionally protected activity. Unlike the conduct at issue in *Tinker, Chandler*, and

 

*Cain,* plaintiffs' speech was not political in nature and did not touch on a matter of public concern. The parties have cited to no authority for the proposition that student speech addressing merely a private grievance against a school employee, with no political dimension, is capable of giving rise to a claim under Section 1983. The court finds that it would be setting a dangerous precedent capable of unlimited application to rule that private grievances against a school employee with no political dimension can give rise to a claim under Section 1983.

Because plaintiffs' speech was not a matter of public concern nor political in nature, plaintiffs were not engaged in a constitutionally protected activity and the First Amendment is not triggered. Therefore, the court need not consider whether defendants' conduct would chill or deter a person of ordinary firmness from engaging in future similar conduct or whether such deterrence substantially motivated defendants' actions.

Moreover, even if plaintiffs were engaged in a protected activity, plaintiffs' conduct substantially and materially interfered with a school activity. *See Tinker,* 393 U.S. at 509–11, 514, 89 S.Ct. 733. Plaintiffs, who comprised ten members of the team, caused a material disruption to the operation of the boys' varsity basketball team by refusing to board the bus for the away game. Accordingly, the school had the authority to punish such conduct by suspending plaintiffs from the team.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. # 26) is granted. In addition, as stated during oral argument on May 24, 2004, the court grants in part and denies in part defendants' Motion to Strike (Doc. # 57) as follows: defendants' objections are sustained except for those objections pertaining to the testimony of Gary Points.

IT IS SO ORDERED.